IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ROBBY LYNN HARMON                                               PLAINTIFF

v.                              Civil No. 4:21-cv-04014

SHERIFF JACKIE RUNION, Miller
County, Arkansas; WARDEN JEFFIE
WALKER; CAPTAIN GOLDEN ADAMS;
DR. TIMOTHY REYNOLDS, Southern
Health Partners; KEVIN MCCANN,
Southern Health Partners; NURSE PRACTITIONER
STEVEN FOLTZ, Southern Health Partners;
NURSE LONI REDFERN, Southern Health
Partners; NURSE CHELSEY FOSTER, Southern
Health Partners; NURSE LISA DAVIDSON,
Southern Health Partners; AL LANDRETH;
and NURSE STEVEN KING                                        DEFENDANTS

## ORDER

The Plaintiff, Robby Lynn Harmon, originally filed his *pro se* action on March 5, 2021. (ECF No. 1). An Amended Complaint was filed on April 12, 2021. (ECF No. 9). On April 13, 2021, Plaintiff's application to proceed *in forma pauperis* was granted. (ECF No. 11). The Parties have consented to the jurisdiction of this Court for all matters, including final disposition in this case. (ECF No. 20).

Before the Court are two motions for summary judgment: the Medical Defendants' Motion for Summary Judgment (ECF No. 22); and the Separate County Defendants Walker, Adams, Landreth and Runion's Motion for Summary Judgment (ECF No. 26). The Court has considered the motions, and the Plaintiff's Response (ECF No. 38) to the motions. The issues presented are ripe for decision.

1

## I.  FACTUAL BACKGROUND

Plaintiff's claims against the Defendants are set forth in his Amended Complaint.  (ECF No. 9).  Plaintiff's first claim is stated against all Defendants -- Sheriff Jackie Runion, Warden Jeffie Walker, Captain Golden Adams, Dr. Timothy Reynolds, Kevin McCann,[1] Nurse Practitioner Steven Foltz, Nurse Steven King, Nurse Chelsey Foster, Nurse Loni Redfern, Nurse Lisa Davidson, and Al Landreth.[2]  (ECF No. 9 at 5).  The claim is for "failure to protect or intervene and future harm" and is stated against the Defendants in both their official and personal capacities.  *Id*.  The relevant dates stated are 4/15/20 – 6/25/20 and 8/5/20 – 2/23/21.  *Id*.  Generally, Plaintiff alleges that the Defendants violated his 8th and 14th Amendment rights through their Covid-19 protocols "when the threat was known beforehand and could have been prevented."  Plaintiff asserts that he was incarcerated "at the height of the Covid-19 pandemic and had a pre-existing heart condition."  *Id*. at 6.  Plaintiff's claim concerning Defendants' alleged delayed and delinquent enforcement of mask requirements, temperature / symptom checks, quarantine and social distancing procedures.  *Id*. at 6-7.  Plaintiff further argues that "around 6/15/20" he and other inmates learned that Officers Crane and Studdard and Defendant Dr. Timothy Reynolds tested positive for Covid-19.  *Id*. at 7.  Plaintiff states that the positive diagnoses were not reported to the Arkansas Department of Health and that the individuals continued to work at the facility.  *Id*.  Plaintiff further alleges that he and other inmates began feeling sick on 6/22/20.  *Id.* at 8.  Plaintiff asserts that on 6/26/20, he was transported to the ER and "doctors determined I had Covid-19 and as a result of Covid and pre-existing conditions, I had suffered a heart attack within the last 24 hours."  *Id.*  Plaintiff was put on a heart defibrillator, which he still uses.  Plaintiff was released

---

[1] On April 19, 2022, pursuant to the Medical Defendant's Motion for Summary Judgment (ECF No. 22), the style of this matter was changed to correct the name Dr. Kevin McCain to Kevin McCann.  Defendant McCann will be referred to correctly, as McCann, throughout.  (ECF No. 39).

[2] On April 19, 2022, pursuant to the Answer to Amended Complaint and All Amended Complaints (ECF No. 18), the style of this matter was changed to correct the name Officer Admin G to Al Landreth.  Defendant Landreth will be referred to correctly, as Landreth, throughout.  (ECF No. 40).

from custody, due to his illness, while he was still in the hospital.  *Id*.  Plaintiff asserts that Landreth "never investigated, forwarded or responded" to his grievances in a proper manner.  (ECF No. 9 at 9).  Plaintiff assert that Landreth "opened my complaints/grievance requests marked them as not a grievance and never forwarded them to any official who could help me with my medical or any other concern."  (ECF No. 9 at 9).  Plaintiff asserts that he returned to the jail on 8/5/20, and was required to wear his heart defibrillator that required 2 batteries.  *Id*.  Plaintiff states that his batteries were not charged properly numerous times, causing him to go without his defibrillator for long periods of time.  *Id*.  With respect to his official capacity claims, Plaintiff states that the Defendants "violated their on policy of maintaining inmates health to the existing level of required/ongoing conditions/treatment upon intake into the jail, as well as, their own policies regarding Covid-19 protocol measures . . . resulting in irreversible harm."  (ECF No. 9 at 11).  Further, Plaintiff asserts that Defendants "have a custom of not maintaining an inmate with serious medical needs health, to a point where outside medical help is required."  *Id*.

Plaintiff's second claim is for "future harm and deliberate and reckless indifference to a known threat."  (ECF No. 9 at 12).  Plaintiff again names each Defendant to the claim, suing in both the Defendants' official and personal capacities.  *Id*.  Plaintiff states "the acts and omissions of claim #2 are the exact same as claim #1, but viewed in light of all defendants acting with indifference even though they were fully aware of the risks plaintiff was subjected to.  Plaintiff can show proof Defendants knew and disregarded the risk of serious harm."  *Id*.

Plaintiff's third claim is again stated against each Defendant in both their official and personal capacities.  Plaintiff states that his constitutional rights were violated for "refusal/denial/delay of proper medical care."  (ECF No. 9 at 13).  Plaintiff states Defendants Runion, Walker and Adams "acted with deliberate indifference to Plaintiff's medical needs when they allowed the facility . . . to break CDC, Arkansas Department of Health protocol in protecting

3

his population from a serious infections disease, Covid-19." (ECF No. 9 at 14-15). Plaintiff argues these Defendants did not provide "proper PPE, sanitation, symptom checks or quarantine in a timely manner." *Id*. at 15. Plaintiff further states Defendants "allowed positive Covid-19 officers to work" and "didn't properly test, contract trace or quarantine." *Id*. Plaintiff states that Defendant Landreth "violated his constitutional rights by not following MCDC's grievance policy rules." (ECF No. 9 at 15). Plaintiff states Defendants failed to provide him appropriate medical care, given the Covid-19 pandemic and his pre-existing heart condition. *Id*. Plaintiff also states that Defendants failed to keep his heart defibrillator batteries charged. *Id*. at 17.

Plaintiff seeks both compensatory damages and punitive damages as relief for his claims. (ECF No. 9 at 19).

The following is a summation of the facts established for purposes of this summary judgment proceeding:

Plaintiff was booked into the Miller County Detention Center ("MCDC") three separate times in 2020 – February 2, 2020, May 24, 2020, and October 3, 2020. (ECF No. 23-2 at 1, 3, 5).

According to Plaintiff's February 2, 2020, booking records, he reported having a "bad heart" and four stents. (ECF No. 23-2). A stent is a tiny tube placed into a hollow structure in your body. The stent holds the structure open. (ECF No. 23-1 at 2).

On March 2, 2020, the MCDC began providing precautionary measures due to the threat of Covid-19. (ECF No. 26-1 at 2; 26-2).

On or around March 3, 2020, the Arkansas Department of Health notified law enforcement of the potential threat of Covid-19. (ECF No. 26-1 at 2; 26-2 at 7).

On March 23, 2020, MCDC promulgated the Standard Operating Procedure 05.00 – Pandemic and Public Health Emergency. (ECF No. 23-3; 26-1 at 2; 26-2 at 9). The order is applicable "to all Detention Division Staff." *Id*.

The stated policy sets out guidance for the use of Personal Protective Equipment (PPE), Isolation, and Quarantine of inmates. The policies that were implemented were designed to educate staff on CDC, State, and Local Department of Health Guidelines; appropriate quarantine and isolation of inmates; appropriate use of PPE; implementation of temperature checks; cleaning and disinfecting of jail surfaces; and limiting the transmission of Covid-19 by suspending fingerprinting, property releases, and lobby visitation. (ECF No. 26-1 at 2; 26-2 at 9).

The policies were to be implemented by phases, depending on the ebb and flow of the pandemic. Phase One was implemented on April 30, 2020. Phase Two was implemented on May 27, 2020. Phase One was reactivated on June 17, 2020. Phase Two was reactivated on September 10, 2020. (ECF No. 26-1 at 2; 26-2 at 9, 20, 22, 24, 25).

According to the Affidavit of Jeffie Walker, "the policies and procedures, as promulgated, were based on the evolving medical science as it was understood at the time." Walker further testifies, "[t]he policies and procedures represent a good-faith effort to limit the spread of the Covid-19 virus within the MCDC." (ECF No. 26-1 at 3).

MCDC began working to vaccinate inmates by March 25, 2021. All inmates were given the opportunity to receive the vaccination. (ECF No. 26-1 at 3).

When Plaintiff was booked into the MCDC on May 24, 2020, he again reported that he had a bad heart. (ECF No. 23-2 at 4).

Plaintiff alleges that he became ill on or about June 22, 2020. (ECF No. 9 at 7). Plaintiff states "Some were moved to a quarantine pod, others of us were left in our regular housing locations. MCDC (Defendants) still never administered Covid-19 tests." *Id.*

Plaintiff alleges that on June 15, 2020, he learned that "3 MCDC staff (Officers Crane, Studdard, and Dr. Reynolds) tested positive for Covid-19." (ECF No. 9 at 7).

According to the Affidavit of Dr. Timothy Reynolds, he has never had a positive test for

5

Covid-19, and at no time was he present at MCDC in June 2020. (ECF No. 30 at 2).

Plaintiff was transported to the emergency room on June 28, 2020, for evaluation and treatment of chest pain. Plaintiff was bonded out of MCDC on June 29, 2020, due to having tested positive for Covid-19. (ECF No. 23-1 at 1-2; 23-2 at 7; ).  Plaintiff asserts that he "had suffered a heart attack within the last 24 hours."  (ECF No. 9 at 8).

When Plaintiff was booked in on October 3, 2020, he also reported that he had a serious medical condition with his heart.  (ECF No. 23-2 at 5-6).  Plaintiff had been placed on a heart defibrillator since his last incarceration.  (ECF No. 23-2 at 9, 21).

Plaintiff was sent to the emergency room on October 4, 2020. The October 4, 2020 records from Wadley Regional Medical Center indicate that Plaintiff had previously been admitted for Covid-19. (ECF No. 23-2 at 9, 12).

The records from Wadley Regional Medical Center indicate that Plaintiff's blood troponin level was elevated on August 24, 2020. Troponin tests measure the level of cardiac specific troponin in the blood to help detect heart injury. When there is damage to heart muscle cells, troponin is released into the blood.  (ECF No. 23-2 at 9, 12).

Plaintiff's drug screen during his August hospitalization showed positive for methamphetamine and opiates.  Plaintiff's Wadley Regional Medical Center records states: "Plaintiff initially stated that he used methamphetamine 10 days prior to admission however during the course of the hospitalization he . . . revealed that he took amphetamine within the past 3 days." (ECF No. 23-2 at 14).  Plaintiff was not incarcerated at MCDC in August 2020. (ECF No. 23-2 at 1-6).

Because of Plaintiff's ongoing cardiac issues, he was referred to a cardiologist in December 2020, who ordered aspirin daily, increase Entresto dosage, continue with life vest, and start on Ranexa. The medical staff complied with those orders. (ECF No. 23-2 at 9, 10, 11).

Defendants testify that they have no knowledge of Plaintiff's defibrillator batteries being left unplugged on January 25, 27, or 29, 2021. (ECF No. 23-1 at 3; 23-5; 23-6; 23-7; 23-8; 23-9; 30 at 2).

Medical Defendants Dr. Timothy Reynolds, Kevin McCann, Steven Foltz, Steven King, Chelsey Foster, Loni Redfearn, and Lisa Davidson each state in their affidavit in support of Motion for Summary Judgment, that they did not withhold medical care from Plaintiff. Further, Medical Defendants Dr. Timothy Reynolds, Kevin McCann, Steven Foltz, Steven King, Chelsey Foster, Loni Redfearn, and Lisa Davidson all state that while on the premises of MCDC they adhered to the policies and practices as outlined in Standard Operating Procedure 05.00 - Pandemic and Public Health Emergency. (ECF Nos. 23-1 at 3; 23-5; 23-6; 23-7; 23-8; 23-9; 30 at 2).

At all times relevant, Southern Health Partners contracted with Miller County to provide healthcare services to inmates housed at the MCDC. (ECF No. 23-1 at 3).

In the Affidavit of Al Landreth, a Jail Administrator at MCDC, Landreth testifies that he has "reviewed the grievances of Plaintiff and do not find that he grieved his claims contained in this lawsuit." (ECF No. 26-3). Landreth further testifies that "Plaintiff failed to exhaust his administrative remedies for this lawsuit." *Id*.

On October 20, 2020, at 5:57 PM, Plaintiff submitted a grievance which was assigned to "Medical." (ECF No. 26-5 at 3). The request states "on two [2] occasions medical and the guards at miller co jail have refused / didn't come back to get me until the next morning. Chelsey, redfurn called me in to inform me to stop having my people call up here. They have neglected my medical problems, I had to have my people call to get me to the inf. Medical is neglecting to give me proper medical attention for my problems." *Id*. A Note was entered by Landreth on 10/27/2020, at 10:14 AM, stating "I have forwarded you request to the appropriate authority." A response by Medical M. Medical was entered on 10/27/2020 at 10:52 AM stating "You are being giving outstanding

7

medical care while housed at Miller County.  Please submit a sickcall if you need to be seen in the infirmary.  S. King, RN Medical Team Administrator." *Id*.

On October 23, 2020, at 7:57 PM, Plaintiff submitted a grievance which was assigned to "Medical."  (ECF No. 26-5 at 4).  The request states "10/27 5;45 the nurse chelsey asked about my battery. I told them I had 2 bars at the time ellis said he would be back to change it.  6;50 Ellis came to pod and I reminded him of my battery he said give him a second he would bring it to me. 10;10 or so battery dead ellis never came back walker came in I told him then that's when battery was change once again apparently my life is a joke to miller county the only reason im makin these grievance is for documentation for my attorney is what I have been ask."  A Note was entered by Landreth on 11/2/2020 at 12:18 PM stating "I have forwarded you request to the appropriate authority."  A Response was entered by Medical M. Medical on 11/2/2020 at 12:58 PM stating "Message acknowledged that you want no action.  You're submitting strictly for documentation. S. King, RN Medical Team Administrator." *Id*.

On January 31, 2021, at 8:29 PM, Plaintiff submitted a grievance which was assigned to "Medical."  (ECF No. 26-5 at 6).  The request states "on the 29 day of jan 2021 around 8:45-9:30, I went to medical to change my battery and the battery mech. in medical was unplugged and the batteries was dead.  I ask officer Lowry and LVN Lisa why was the battery mech. was unplugged, they reply they didn't know.  Officer Lowry told me that he would bring my battery before shift change and He never did." *Id*.  On 2/1/2021, a 12:41 PM, Landreth noted "I have forwarded you request to the appropriate authority."  A response was entered on 2/1/2021 by Medical M. Medical at 12:59 PM, stating "This is a duplicate request or the problem has already been fixed." *Id*.

On January 31, 2021, at 8:38 PM, Plaintiff submitted a grievance which was assigned to "Medical."  (ECF No. 26-5 at 7).  The request states "on the 30th day of Jan. 2021, I ask Officer Moore would he get my battery because I been trying to get a charged battery every since yesterday

8

(1/29/21), Officer Moore ignored me because He was to worried about wet clothing on the wall. My life was at stake and the Officers ignored my state of being. I didn't get a charge battery until Officer Studder came on at 9:00 am 13th hours later." *Id*. A response was entered on 2/1/2021 at 12:59 PM, stating "Message acknowledged. I'll speak with staff. S. King RN Medical Team Administrator." *Id*.[3]

The MCDC has policies in place regarding the operation of the facility and the treatment of inmates including but not limited to a procedure for filing grievances or complaints. (ECF No. 26-4 at 1). A complaint is defined as "a verbal and/or written communication with staff for informal resolution of an incident, policy, procedure, or condition within the jail which personally/directly affects the inmate." A grievance is defined as "written communication for formal resolution of an incident, policy, procedure, or condition within the jail which personally affects the inmate filing the grievance. A grievance can only be made subsequent to filing a written complaint and receiving a written response." *Id.*

The MCDC's policy and procedure regarding the submission of complaints provides they are first submitted through a KIOSK. Inmate "requests/concerns/complaints" are reviewed daily (excluding weekends and holidays) and sent to the appropriate person to address. Complaints are forwarded to the lowest appropriate supervisory level to address and respond. (ECF No. 26-4 at 4). The supervisor addressing the complaint is required to deliver a response to the inmate. Inmates who are unable to resolve a complaint through the procedure using the KIOSK are then required to submit a grievance in accordance with the MCDC's grievance procedure. *Id.* at 4.

Within thirty (30) calendar days of receipt of a grievance, the grievance is reviewed and if

---

[3] Additional grievances are included in the record. Only the grievances related to Plaintiff's claims in this matter have been summarized. (ECF No. 26-5).

applicable thoroughly investigated. (ECF No. 26-4 at 5). The investigation results are then provided to the Jail Warden or the Risk Management Officer, in writing. *Id.* An inmate may appeal the result of the grievance findings to the Jail Warden by stating they wish to "APPEAL THE FINDINGS ON THE 'INMATE ACKNOWLEGEMENT FORM'". (ECF No. 26-4 at 5). Following the disposition of the appeal, the Request for Administrative Remedy Form shall be returned to the Risk Management Officer and the case number closed out. The form is then forwarded to the Lieutenant or Captain for distribution, copies are made for the inmate's classification file, and then delivered to the inmate. (ECF No. 26-4 at 7).

In their motion, the Medical Defendants argue that summary judgment is appropriate because they did not exhibit deliberate indifference to Plaintiff's safety; because they were not deliberately indifferent to Plaintiff's serious medical needs; because they had no prior knowledge that Plaintiff's defibrillator batteries were left unplugged; and, because Plaintiff suffered no physical injury. (ECF No. 23). The Medical Defendant further argue that they are not liable to Plaintiff with respect to his official capacity claims. *Id*.

The County Defendants argue that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies; because they did not exhibit deliberate indifference to Plaintiff's safety; because the Medical Defendants were not deliberately indifferent to Plaintiff's serious medical needs; and, because Plaintiff suffered no physical injury. (ECF No. 27). The County Defendants also argue that they are not liable to Plaintiff with respect to his official capacity claims. *Id*.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Plaintiff's claims can be broken down into two categories: his claims concerning Covid-19 procedures and precautions; and his claims concerning Defendants' failure to provide medical care and failure to keep his heart defibrillator batteries charged.

### A. Covid-19 Procedures and Precautions

The County Defendants argue Plaintiff failed to exhaust his administrative remedies before he filed the instant lawsuit and that consequently his claims are barred.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute the MCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights. (ECF No. 26-3; 26-4). The summary judgment record confirms Plaintiff did not file any grievance related to the MCDC Covid-19 procedures, or the implementation or enforcement of Covid-19 procedures, prior to his filing of this lawsuit. (ECF No. 26-5). Moreover, although Plaintiff, in his verified complaint and in his *unverified* summary judgment response, argues that Defendants "didn't allow Plaintiff's grievances or complaints to be forwarded or investigated up the proper chain of command," (ECF No. 9 at 16; ECF No. 38 at 11), it is undisputed that each of Plaintiff's written documented complaints (none of which were related to Covid) were responded to in some way. It is also undisputed that Plaintiff failed to continue the necessary appeal steps required to fully exhaust any issue through the grievance process for the complaints he did pursue. (ECF No. 26-4; 26-3). Other than Plaintiff's bare allegation that he was prevented in fully utilizing the grievance procedure, there is proof to support this claim.

Accordingly, I recommend all claims concerning the MCDC Covid-19 procedures and precautions be dismissed due to Plaintiff's failure to exhaust his administrative remedies.

**B. Medical Care and Heart Defibrillator Batteries**

With respect to Plaintiff's claims concerning the Defendants' failure to provide medical care and failure to keep his heart defibrillator batteries charged, as with his claims concerning Covid-19, the Court again finds that Plaintiff has failed to exhaust his administrative remedies. From the proof submitted, Plaintiff complains concerning his heart defibrillator batteries, in writing through the KIOSK system in four separate written complaints. (ECF No. 26-5 at 3, 4, 5, and 7). Each complaint was responded to by an appropriate authority. *Id*. Again, Plaintiff failed to continue the necessary steps to appeal those responses as required to fully exhaust under the

13

established grievance procedure. (ECF No. 26-4). Plaintiff's claims concerning his heart defibrillator batteries are subject to dismissal.

Further, even if Plaintiff had exhausted his administrative remedies prior to filing this lawsuit, the Court finds Plaintiff's medical care claims fail on the merits.

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by arrestees and pretrial detainees. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012)(noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment the analysis parallels that under the Eighth Amendment). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An

"inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox,* 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff argues that he was denied appropriate medical care on several occasions and specifically when his heart defibrillator batteries were not kept charged causing him, at one point, to go 13 ½ hours without working batteries. (ECF No. 9 at 10). Plaintiff fails to allege who left his batteries uncharged and, in their affidavits, Defendants each testify that they have no knowledge of any the batteries being left unplugged. Accordingly, Plaintiff simply fails to provide proof of a deliberate disregard for his serious medical need.

Plaintiff also fails to present "verifying medical evidence" that any delay in treatment due to the uncharged batteries caused him a detrimental effect. In short, he suffered no injury even if it were determined the Defendants were deliberately indifferent. Plaintiff's medical care claims are subject to dismissal.

### C.  Official Capacity Claims

Even if the Court assumes Plaintiff's constitutional rights were violated by one or more of the individual Defendants, Plaintiff's official capacity claims are also subject to dismissal, as he has failed to present proof which supports any plausible official capacity claim against any of the Defendants. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against the County Defendants are treated as claims against Miller County. Plaintiff's official claims against the Medical Defendants are treated as claims employer Southern Health Partners, Inc. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a [county] cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish municipal liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (*citation omitted*). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff fails to identify any custom, policy, or practice of Miller County or Southern Health Partners, Inc. which violated his constitutional rights.

## IV. CONCLUSION

For the reasons stated above, I find that both the Medical Defendants' Motion for Summary Judgment (ECF No. 22) and the Separate County Defendants Walker, Adams, Landreth and Runion's Motion for Summary Judgment (ECF No. 26) should be, and hereby are, **GRANTED**. Plaintiff's claims against the Defendants should be, and hereby are, **DISMISSED WITH PREJUDICE**.

DATED this 2nd day of May 2022.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE